**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Paul LAMONGE, Defendant-Appellant (two cases).**

**Nos. 71-1467, 71-1760.**

United States Court of Appeals, Sixth Circuit.

March 29, 1972.

1. 20 U.S.C.A. § 236 et seq.

2. 22 U.S.C.A. § 2601 et seq.

Laws of Florida 1971, Ch. 71–263.

**198**

Charles I. Swartz, Warren, Ohio (Court Appointed), for defendant-appellant.

Ronald G. Scheraga, Department of Justice, Appellate Section, Criminal Div., Washington, D. C., Robert D. Gary, Special Atty., Department of Justice, Cleveland, Ohio, on brief, for plaintiff-appellee.

Before McCREE and KENT, Circuit Judges, and McALLISTER, Senior Circuit Judge.

PER CURIAM.

Appellant was charged in four counts of a ten-count indictment with possession, sale, and delivery of counterfeit Federal Reserve Notes, in violation of 18 U.S.C. §§ 472, 473, and with conspiracy to do so in violation of 18 U.S.C. § 371. At trial, the Government acceded to appellant's motion to dismiss the conspiracy count after the court had excluded from evidence testimony about Government wiretaps employed in the investigation. The jury convicted appellant of the three substantive offenses, and the court imposed concurrent sentences of five years imprisonment on each count.

Appellant listed 23 issues on appeal, only one of which requires discussion. He contends that the court's cautionary instructions were inadequate to cure the prejudicial effects of inadmissible wiretap evidence which had been admitted before proper objection was made.

The United States Secret Service investigation of appellant's activities began in early 1969 as a result of information given to an agent, Robert Knepp, by one Charles DeMoss, who had been serving as a Government informer in an unrelated case. DeMoss informed Knepp that Lamonge had offered to sell DeMoss counterfeit money. On instructions from his superiors to "go ahead and pursue it," Knepp had DeMoss place frequent calls to Lamonge during February and March, 1969, to inquire about the purchase of counterfeit currency. In these conversations the parties employed circumlocutions such as a proposed purchase of "antiques."

On April 2 or 3, 1969, the United States District Court for the Northern District of Ohio issued an undated order authorizing interception of telephone wire communications at two places: at the house of Mario Guerrieri in Youngstown, Ohio, and at the Youngstown business premises known as Satan's Inferno. These wiretaps were continued until April 9 on this authorization. On that date, the court issued a second undated order authorizing the continuation of the wiretaps "previously authorized by [the same District Judge] on April 3," and additionally authorizing a wiretap at the Guys and Dolls Tavern in Youngstown. The order concluded:

c) Such interception to continue for a period of eight days from the date of this order or until communications shall have been intercepted which reveal the date and exact manner in which MARIO GUERRIERI acquires and distributes counterfeit currency and transfers such counterfeit currency to ROBERT COOPER and to LEON ELDRIDGE, whichever is earlier.

PROVIDED THAT, this authorization to intercept wire—communications shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications that are otherwise not subject to interception under Chapter 119 of Title 18 of the United States Code, and must terminate upon attainment of the authorized objective or, in any event, at the end of eight days from this date.

■ We observe that the absence of a date on the order made its duration unlimited by its own terms. As such, it apparently authorized a wiretap for an unreasonable length of time which rendered it invalid. *See* Berger v. New York, 388 U.S. 41, 57, 59–60, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). This is true as well because the order did not comply with 18 U.S.C. § 2518(4) which requires that

[e]ach order authorizing or approving the interception of any wire or oral communication shall specify—

.    .    .    .    .    .

(e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.

After one postponement, appellant's trial was set for May 10, 1971. On May 7, 1971, the prosecuting attorney filed a motion requesting the issuing judge to amend his wiretap orders by adding the date of issuance *nunc pro tunc*. The court granted the motion and entered an order amending the first wiretap order by adding "ordered this 2nd day of April, 1969." The second wiretap order, which had authorized continuation of an interception "previously authorized by [the same District Judge] on April 3, 1969," was amended in the same way to read "ordered this 9th day of April, 1969." The assertion that the date was added *nunc pro tunc* did not change the fact that the wiretap authorizations were on their face invalid at the time they were used. The evidence obtained through their use was inadmissible.

■ The Government also failed to comply with 18 U.S.C. § 2518(9) which requires that

[t]he contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that

the party will not be prejudiced by the delay in receiving such information.

On April 16, 1971, a defense motion for production of the wiretap documents was filed. The Government agreed, in its response to the motion on April 21, 1971, to produce all orders and papers pertinent to the wiretaps and to make the wiretap documents and recorded conversations available, and submitted a proposed order to that effect. On May 5, 1971, five days before trial, the District Judge to whom the case had been assigned for trial issued an order substantially adopting the Government's proposed order to make the wiretap evidence available. Copies of the documents were finally given to defense counsel on May 10, the day the trial began. In the meantime, on May 7, the Government had secured the order dating the wiretap authorization *nunc pro tunc*. The motion to change the authorizations was filed and granted without notice to appellant.

On the day trial commenced, defense counsel filed a motion for a continuance on the ground that the documents had just been received. The court denied the continuance because it had earlier granted defense counsel a continuance from February 23 to March 15.

Following testimony about the wiretaps by two Secret Service Agents, Browne and Carmona, defense counsel made an oral motion to suppress on the ground that the Government had failed to comply with 18 U.S.C. § 2518(9). That motion was granted, and the court instructed the jury to disregard all the testimony regarding wiretaps. Appellant also moved

> that all of the evidence presented in this case by the government which was obtained from the wiretapping information be further excluded from the jury and the jury instructed to disregard it.

The court denied this motion on the grounds that the wiretap itself was legal and that the statute upon which the earlier motion was based did not require the exclusion of all fruits of the wiretaps. Appellant then moved to dismiss the substantive counts of the indictment, and the court stated:

> Well, the Court has already ruled that the wire tap itself was lawful, and there is no fruit of a poisoned tree doctrine here, and the Court will overrule the motion of the defendant as to Counts 2, 3, and 4.

The only substantial issue before us is whether the court's cautionary instruction was sufficient to eliminate the effects of the illegally obtained evidence. At trial, appellant did not attempt to show any possible connection between the wiretaps and any evidence introduced, other than the explicit references, by agents Browne and Carmona, to the employment of wiretaps and to certain conversations overheard through their use. Appellant's brief, which was filed in this court 5½ months after his conviction, also fails to suggest any use of wiretap evidence at his trial other than in the testimony of Browne and Carmona. And our own examination of the transcript and record has likewise failed to suggest any other possible use of the fruits of the wiretap. On the contrary, it appears that the Government's case against appellant was overwhelming without the wiretaps, and that the wiretaps were employed primarily to obtain evidence against others involved in the distribution of counterfeit notes. In the order authorizing the wiretap, the court found probable cause to believe

> . . . that Mario Guerrieri . . . and Leon Eldridge . . . are committing and are about to commit and are conspiring to commit an offense enumerated in Section 2516 of Title 18 . . . ;
>
> . . . that communications concerning that offense will be obtained through the interception . . . [of] communications concerning the date and exact manner in which Mario Guerrieri acquires, distributes and transfers counterfeit currency to Robert Cooper and to Leon Eldridge and others.

Other than testimony to the effect that wiretaps were used, the only testimony prejudicial to appellant resulting from them was that of agent Carmona. He stated that in a conversation between appellant and Mario Guerrieri, reference was made to "fifty big ones." Since appellant was arrested in an attempt to sell $50,000 in counterfeit currency to a Government agent, the reference might have indicated a conspiracy to make the sale. However, the conspiracy count of the indictment was dismissed after the wiretap evidence was suppressed. And the court made it very clear that the jury was entirely to disregard testimony about wiretaps or wiretap evidence:

> The Court has ruled that the information relative to the conversations received on the tapes of the wiretaps would not be received in this trial. . . . Therefore, . . . the last witness who testified with reference to the logs in regard to the court order, and any testimony which the witness before him, Mr. Browne, may have had with reference to a wire tap are matters which are of no concern to this jury.

> And if there is any testimony that was given which might have been prejudicial to the defendant by reason of the fact that it was disclosed that a wire tap was made, this should have no bearing on your decision in this case and you should disregard any such testimony as the Court has ordered that it be stricken from the record.

Further, we observe that appellant, who was caught red-handed offering the counterfeit currency to a Government agent, relied exclusively on the defense of entrapment. In attempting to establish that defense, appellant questioned agent Knepp at some length regarding telephone communications between appellant and the Government's informant. In response to a question by defense counsel, Knepp stated:

> Well, I don't know how many calls he made . . . . I know it was frequent and I was there . . . . [Y]ou have

to appreciate it's in a guarded conversation, this is not the type of terminology where the word "counterfeit" is used. He would say, "You know the stuff you showed me in December?" I think he used the word "lamps" was involved.

> Mr. Lamonge answered to the effect, "Im no longer in the antique business," and then came back to it and said, "Those lamps are available."

In the light of the court's cautionary instruction, and appellant's exclusive reliance upon an entrapment defense, which admits all elements of the offense but seeks exculpation because of Government inducement, we conclude that wiretap evidence played no part in appellant's conviction. Accordingly, although we strongly disapprove of the Government's failure to comply with the statute, we affirm the conviction.

Affirmed.