**UNITED STATES of America**

v.

' **George Hume COFER, Jr. and Donald Lee Brennan.**

**Crim. No. A–77–CR–89.**

United States District Court, W. D. Texas, Austin Division.

Jan. 25, 1978.

Jamie Boyd, U. S. Atty., Jeremiah Handy, Asst. U. S. Atty., San Antonio, Tex., for plaintiff.

Charles R. Burton and Roy Q. Minton, of Minton, Burton & Fitzgerald, Austin, Tex., for defendant Cofer.

Gerald H. Goldstein of Levey & Goldstein, San Antonio, Tex., Mark A. Cohen, Austin, Tex., for defendant Brennan.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

Before the Court are motions to suppress illegally seized evidence advanced by both Defendants. Cofer and Brennan are charged with conspiracy to possess marijuana with intent to distribute, 21 U.S.C. § 846, and with possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1), Cofer as an aider and abettor on the latter charge. The Court held an evidentiary

hearing on the motions on January 6, 1978, and took the case under advisement pending the submission of post-trial briefs. Defendants wish to suppress all evidence seized as a result of the installation of an electronic tracking device ("beeper") in a twin-engine Aerocommander airplane, FAA number N6896S, on August 31, 1977; all evidence seized as a result of a detention and search of that aircraft on October 7, 1977, including oral statements resulting from such detention; all evidence obtained from a search of a Chevrolet pickup truck made on October 7, 1977; and, as to Cofer, all evidence seized in a search of a van driven by Cofer on October 7, 1977. The Court grants the motions to suppress except as to any items seized from the van driven by Defendant Cofer on October 7, 1977. This memorandum opinion and order shall constitute the Court's findings of fact and conclusions of law.

The facts are as follows. Law enforcement officers obtained a warrant from a United States Magistrate on August 30, 1977, authorizing the installation of a beeper on a twin-engine Aerocommander aircraft, FAA registration number N6896S. Agents installed the device in the early morning hours of August 31, 1977, while the subject aircraft was parked at the Ragsdale Aviation Center in Austin, Texas. To install the beeper agents entered the cabin of the aircraft by using a skeleton key to open the locked left-hand door of the cabin. Once inside, the officers wired the beeper into the emergency landing transmitter (ELT) of the Aerocommander. Later that morning signals indicated that the plane had taken off heading in a northeasterly direction. Agents were able to track the plane to the Dallas area before losing it. (The beeper apparently does not transmit continuously, but only when the plane is in motion and for a short time thereafter.)

Agents did not have contact with the plane again until October 7, 1977, when Customs agents picked up a beeper signal on their equipment in the Floresville and San Antonio areas. At this time the officers did not know which plane of several equipped with beepers at the time was sending the signal. They knew only that they were getting a radio signal on a frequency they understood to be reserved for Customs beeper transmissions. Customs agents Miller and Picciano took a plane into the air to try to intercept the beeping aircraft; Picciano piloted the Customs craft. When they finally homed in on the target, it had landed at a makeshift landing strip on the Blakeley Ranch near Dripping Springs, Texas. Officer Miller noted that a pickup with camper was backed up to the plane. As pilot Picciano came in for a landing, Miller saw the pickup take off at what he thought was a relatively high rate of speed. As the Customs airplane cut in front of the Aerocommander, the latter made a turn to avoid the Customs plane. As Officer Miller exited his craft the Aerocommander pilot, who turned out to be Defendant Brennan, was still trying to start its second engine.

With gun drawn, Miller ordered Brennan to shut off the engines and come out of the plane. With gun still drawn, Miller asked for and received a description of the color of the pickup which had been pulled up to the Aerocommander. Agent Picciano then went back in the air to locate the pickup, quickly spotting it on a road which runs by the ranch. He followed it some time until the driver, who was never apprehended, pulled into some trees and abandoned the vehicle. Sheriff's officers eventually came to the vehicle and discovered some 877 pounds of marijuana in the camper part of the pickup.

Miller, meanwhile, had inspected the Aerocommander and discovered that it had all but one seat removed, appeared to have an auxiliary gas tank installed inside the cabin, and had plastic sheeting lining the cabin. What Miller thought to be marijuana seeds were on the floor of the cabin. About an hour after the Aerocommander was stopped, Defendant Cofer appeared on the scene in a van, saying he had been called to pick up some people from the aircraft. At gunpoint, Cofer had been asked to exit his vehicle and whether he minded if the Customs agent looked in his van. Cofer voiced

no objection, and Miller opened the van's door, observing what appeared to be refueling apparatus. Cofer was later formally told that he was under arrest.

*Installation of the beeper —*

■ Since the law enforcement officers had to open a locked door on the airplane cabin to enter and install the beeper, there can be no question but that the installation constituted a search for which a warrant issued on the basis of probable cause was a prerequisite. *United States v. Pretzinger,* 542 F.2d 517, 520 (9th Cir. 1976) (beeper installed on airplane pursuant to warrant; manner of installation not given in opinion); *United States v. Hufford,* 539 F.2d 32, 34 (9th Cir.), *cert. denied,* 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976) (warrant required to place beeper under hood of car). Thus there is no need to decide the precedential value of *United States v. Holmes,* 521 F.2d 859, *aff'd by an equally divided court on rehearing en banc,* 537 F.2d 227 (5th Cir. 1976).[1] *See Carter v. United States,* 325 F.2d 697 (5th Cir. 1963) (special concurrence of Judge Jones at 698); 5 *Am. Jur.*2d Appeal and Error, § 902, pp. 338–39. Although the agents in this case did obtain a warrant, the Court finds that the warrant is defective in three respects: 1) the warrant contains no termination date upon which monitoring of the Aerocommander's beeper must cease[2]; 2) the facts contained in the warrant were too stale, too remote in time to justify the issuance of a warrant on August 30, 1977; and 3) the facts contained in the warrant fail to establish probable cause in any event.

■ The Court has located no case in which a court has required, or even passed on, the necessity of circumscribing the time in which surveillance by electronic beepers could be undertaken. However, the Court has noted that in *United States v. Pretzinger, supra* at 519, the magistrate authorized the placement of the beeper for a period of only 30 days. Similarly, the panel opinion in *United States v. Holmes,* in which no warrant for the beeper had been obtained, noted that it saw no distinction between beepers and electronic wiretaps and also emphasized that the surveillance found improper by that panel was theoretically of unlimited duration. 521 F.2d at 864–66. Defendants therefore argue that the warrant is fatally defective because of the absence of. such termination date, by analogy to the wiretap cases, even if it be thought that the agents acted expeditiously in tracking and stopping the Aerocommander aircraft. *See Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) (lack of provision for termination date invalidated state wiretap statute); *U. S. v. Lamonge,* 458 F.2d 197 (6th Cir.), *cert. denied,* 409 U.S. 863, 93 S.Ct. 153, 34 L.Ed.2d 110 (1972). Moreover, in this case it would be difficult to say that the agents themselves had acted affirmatively to limit the duration of the possible intrusions into Defendants' privacy. Though they did begin tracking the craft on the day of the beeper's installation, they soon lost the aircraft and, so far as the record reflects, they made no effort to locate the craft during the next 37 days until Customs agents stumbled onto the beeper's transmission (while actually listening for another airplane) and eventually ascertained that the "beeping" aircraft was the missing Aerocommander.

■ The Government seems to contend that the beeper is so much less intrusive than telephonic wiretapping that there is no need for the warrant to specify a termination date for the surveillance. While the intrusiveness may be less than that of wiretapping, the Court cannot countenance the potentially unlimited duration of this type of surveillance. Citizens have a right to think that the government will not track them for months on end by resort to the latest electronic gadgetry. Here, the parties stipulated that there were beepers in

---

1. An "airplane beeper" case is currently pending before the Fifth Circuit. *United States v. Cheshire,* No. 77–5313.

2. The warrant did contain a 10 day time limit for its execution. All concerned have construed that to mean only that the beeper had to be installed within 10 days.

existence in the Western District of Texas that had stayed operative for as long as 6½ months. This is simply too long a period of surveillance to be justified by a single showing of probable cause. This Court is of the opinion that such a warrant should be issued for only a 30-day period, subject to the possibility of renewal at the end of that time if the circumstances warrant it. *Cf.* Omnibus Crime Control Act of 1968, Title III, 18 U.S.C. § 2518(5). The 30-day limit must be reflected on the face of the warrant. *Berger, supra; Lamonge, supra.*

The Court also finds that the information contained in the affidavit and warrant are too stale to justify the issuance of the warrant on August 31, 1977. The analysis begins with the understanding that whether the affidavit in a given case reflects stale facts cannot be decided in a mechanistic fashion; a case by case approach is required. *United States v. Scott,* 555 F.2d 522 (5th Cir. 1977). The Court notes that many references in the warrant are to things Defendant Brennan allegedly did in 1972. The remainder of the warrant focuses on the period from March 30, 1977, to May 16, 1977, with one reference to "late May" of 1977. While there is some attempt to show that Brennan may have been involved in some long-standing conspiracy, there is no explanation for the delay from mid-May till August 30 when the agents finally applied for the search warrant, nor is there any showing that the facts existing in May which drew attention to the subject aircraft were still true in late August of 1977. Thus the warrant is invalid for staleness. *Durham v. United States,* 403 F.2d 190 (9th Cir. 1968) (four month delay between events in affidavit and issuance of warrant held too long); *United States v. Morris,* 565 F.2d 951 (5th Cir. 1978) (8 months too long). Of course the Court cannot advert to any explanation not contained in the warrant itself.[3] *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

Finally, the Court holds that, disregarding the staleness problem, the facts contained in the affidavit do not establish probable cause for the issuance of the warrant. Again, the Court proceeds by recognizing that while it must read the affidavit in a common sense fashion, it cannot rewrite the warrant or allow it to be bolstered by extraneous evidence. *United States v. Astroff,* 556 F.2d 1369 (5th Cir. 1977). In paragraph 3(B) and 3(C) of the affidavit, various references are made to "checks" of certain items of information. As the testimony at the hearing disclosed, these checks were in fact made by police officers, either on their own or through other governmental authorities. However, one cannot discern that this is what happened from the affidavit. Also in 3(B), an unidentified employee of Ragsdale Aviation is said to have identified a picture of Defendant Brennan as the pilot of the Aerocommander; this is what connects Brennan with the subject aircraft. The identity and reliability of the employee is not disclosed. In fact, the employee in question was one Thomas Earl Grettenberg, an individual recently convicted on multiple charges of rape. In paragraph 3(D) there is a reference to a confidential informant, but the reliability of him and of his information is not addressed in the affidavit. Although the indication is that the informant's information was gathered first-hand by overhearing Brennan's conversations, the references to Brennan's bragging may be thought to undermine the reliability of the substance of his remarks. The references in paragraph 3(F) to an airplane "shooting approaches" at the Timmeron airstrip in late May of 1977 adds nothing to the probable cause determination. Since it is immaterial, it does not matter that the statement appears to be an innocent misrepresentation, the uncontradicted testimony being that the subject aircraft was hangared in California in late May 1977. (The Court found no intentional misrepresentations in the affidavit, nor any other defects.)

---

**3.** The Court finds that the Magistrate was not given any sworn information which is not reflected in the affidavit.

*Events of October 7, 1977—*

Since the Court has concluded that the warrant was improperly issued for the reasons stated above, little need be said about the incidents taking place on October 7, 1977. It is clear that the stop and search of the Aerocommander, the taking of Brennan's "statement" about the pickup, and the seizure of the pickup and its illicit cargo were all direct results of the placement of the beeper on the plane under authority of the August 30, 1977, warrant and as such are to be suppressed as fruits of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). (With regard to the seizure of items from Cofer's van, the Court finds that the agents had probable cause to search the van, that no warrant was needed to search the vehicle, and that the taint of the primary illegality—the beeper installation—had been attenuated. *Wong Sun, supra.*) Were it necessary to reach the question of probable cause to stop the Aerocommander on October 7, 1977, the Court would be inclined to find probable cause lacking. The Customs agents admitted they had no evidence to indicate that the plane had crossed the border on its way northward. They really knew only that it had a beeper on it (installed over five weeks earlier, as it turned out) and that it was parked on a makeshift airstrip with a pickup truck backed up to it. There is also the somewhat ambiguous evidence that the pickup and/or the plane sought to flee as the Customs agents landed. *United States v. Macias*, 546 F.2d 58 (5th Cir. 1977). The Court doubts that this amounts to probable cause. The "statement" taken from Brennan would then appear to be tainted under *Wong Sun*, in addition to the apparent *Miranda* violation. The seizure of the truck would also be tainted, although there is a possibility that the pickup might fall under the inevitable discovery line of cases. Since both sides placed heavy reliance on the warrant question,[4] these issues were not stressed at the hearing. Fortunately the Court need not rule definitively on those issues.

4. The Government never questioned the standing of Cofer to challenge the beeper installation. *See United States v. Holmes*, 521 F.2d at

For the reasons stated above, the motions to suppress are hereby GRANTED except as to the items seized from the van of George Hume Cofer, Jr., on October 7, 1977.

868 and 537 F.2d at 228 (supporting government position).