UNITED STATES of America,
Plaintiff-Appellant,

v.

Clark BAILEY and Carolyn Gomez,
Defendants-Appellees.

No. 79–5092.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 9, 1979.

Decided July 31, 1980.

James K. Robinson, U. S. Atty., James E. Papelian, Asst. U. S. Atty., Detroit, Mich., for plaintiff-appellant.

Eric L. Clay, Detroit, Mich., Daniel Blank, Birmingham, Mich., for defendants-appellees.

Before CELEBREZZE and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

This case of first impression for our Circuit requires us to review a district court's order suppressing evidence in a drug prosecution where the Government used a "beep-

er"[1] to monitor the location of a drum of chemicals. Although the beeper does nothing more than reveal its own location, we conclude that its use, on the facts of this case, violated the fourth amendment.

## I

On April 25, 1978, in Hartford, Connecticut, an informer advised a Drug Enforcement Administration (DEA) agent that Carolyn Ann Gomez was attempting to purchase chemicals in order to manufacture phencyclidine, or PCP, a Schedule II Controlled Substance. The informer subsequently introduced DEA undercover Agents Terrence Sprankle and Gary Sloboda who posed as suppliers of precursor chemicals to Carolyn Gomez. After a number of conversations, both in person and by telephone, the agents agreed to deliver the requested chemicals to Ms. Gomez on Sunday, May 7, 1978, in Detroit, Michigan. These chemicals were the property of the Government.

On May 5, 1978, the Government filed an affidavit with a United States Magistrate of the Eastern District of Michigan concerning the aforementioned dealings. The Magistrate issued a warrant authorizing DEA to install a beeper in one of the drums of chemicals to aid in the surveillance and investigation of the suspected clandestine laboratory. The beeper was installed before the chemicals were delivered to Ms. Gomez on May 7, 1978.

Immediately after the delivery, defendant Gomez was surveilled visually to an apartment complex at 7010 E. Warren, Detroit, Michigan. DEA agents observed two males take the chemicals into the apartment complex. Monitoring of the beeper confirmed that the drum was within this apartment complex.

Two days later during a routine check, an agent discovered that no signal was being transmitted from the Warren complex. On the following day, May 11, the device was located in another apartment building at 11750 Martindale North, Detroit, Michigan. DEA agents gained access to this building through a ruse and found the signal was emanating from a locked storage room in the basement of the complex.[2]

From May 11, 1978, to July 14, 1978, without entering the apartment complex, agents made daily checks of the signal. These checks indicated no movement of the transmitter from the Martindale address.

By July 14 the beeper's signal was weakening. The Government filed an affidavit and obtained a second warrant authorizing agents to enter the Martindale complex, pinpoint the location of the drum, search the identified room or area, and seize the homing device and chemicals. The search warrant was executed on July 17, 1978.

Defendants Clark Bailey and Carolyn Ann Gomez were indicted for conspiracy to manufacture phencyclidine (PCP), a Schedule II Controlled Substance, a violation of 21 U.S.C. §§ 841(a)(1) and 846. Defendants filed a joint motion to suppress evidence discovered as a result of the beeper surveillance, on the ground that both warrants were invalid because they contained no time limits. On February 20, 1979, the District Court, the Honorable James P. Churchill presiding, granted defendants' motion to exclude the evidence, holding that warrants without time limitations violate federal statutory authority implementing the fourth · amendment.[3] The memorandum opinion of Judge Churchill is published at 465 F.Supp. 1138 (E.D.Mich.1979).

---

1. A "beeper", a "beacon" or a "transponder" is a small radio transmitter that broadcasts a signal. It does not record any sounds or transmit conversations. The signal that the beeper emits can be monitored by directional finders thereby enabling officers to determine the beeper's location. Carr, *Electronic Beepers*, 4 Search and Seizure L.Rep.No. 4 (April 1977).

2. *See Dalia v. United States*, 441 U.S. 238, 252, and n. 14 at 253, 99 S.Ct. 1682, 1690–1691, and n. 14 at 1691 (1979) (Entry gained by ruse constitutionally permissible).

3. Judge Churchill gleaned this federal statutory policy from Fed.R.Crim.P. 41(c)(4) and Title II of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510 -20). Rule 41(c) limits the life of a search warrant to ten days. Similarly 18 U.S.C. §§ 2510 *et seq.* contains detailed provisions for time limitations on authorized intercepts.

The Government appeals the order of Judge Churchill granting the motion to suppress the evidence. We affirm.

## II

The starting point for the fourth amendment analysis in this case is *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *Katz* presented the question whether warrantless electronic monitoring of an individual's telephone conversations violates the fourth amendment. The Government had persuaded the Ninth Circuit that there was no violation because federal agents did not intrude physically into the telephone booth from which Katz made the calls. The Supreme Court rejected this trespass analysis, saying:

> For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. See *Lewis v. United States,* 385 U.S. 206, 210 [87 S.Ct. 424, 427, 17 L.Ed.2d 312]; *United States v. Lee,* 274 U.S. 559, 563 [47 S.Ct. 746, 748, 71 L.Ed. 1202]. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected, 389 U.S. at 351, 88 S.Ct. at 511.

Finding the Government's activities violated Katz's justifiable expectation of privacy, the Court held the warrantless eavesdropping was a search for fourth amendment purposes.

Under *Katz,* the question whether Government activities in a case constitute a search or seizure is inextricably intertwined with the question whether they violate an individual's legitimate expectation of privacy in that particular case. If the individual legitimately expected the information or material the Government acquired to remain private, the act of the Government acquiring that information or material constitutes a search or seizure for fourth amendment purposes. Conversely, unless it invades protected individual privacy, a governmental intrusion is not a search or seizure.

■ We consider it irrelevant whether a particular governmental intrusion is classified as a "search" or as a "seizure." What matters is whether it violates an individual's legitimate expectation of privacy. Therefore, it is not necessary to speculate whether a beeper "searches" or "seizes" anything. Furthermore, the fourth amendment does not overlook de minimis intrusions. An intrusion is not de minimis if it violates an individual's legitimate expectation of privacy.[4] The Government's argument that beeper surveillance is too minor an intrusion to constitute a search begs the question: the intrusion is minor only if it does not violate protected individual privacy.

The concurring opinion of Justice Harlan in *Katz* summarized the two part standard the Court has used to analyze the privacy

---

**4.** *United States v. Dubrofsky,* 581 F.2d 208, 211 (9th Cir. 1978) and a few other cases contain language to the contrary. These cases have analogized beepers to flashlights, tracking dogs, and other investigative tools that merely enhance the physical senses of Government agents. Such sense enhancement ordinarily would not constitute a search under our analysis because an individual does not have a justifiable expectation of privacy in information a Government agent could acquire lawfully under conditions more favorable to sensory reception. *See, e. g., United States v. Moore,* 562 F.2d 106, 112 (1st Cir. 1977), *cert. denied,* 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978):

> Moreover, defendants had no right to assume that law enforcement officers would not enhance their ability to see or track them by use of various artificial means such as binoc-

ulars or even radar, or by observing them from the air.

*Cf. United States v. White,* 401 U.S. 745, 753, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) (no fourth amendment violation where a Government informer who lawfully could transcribe his conversations with a defendant transmits or records those conversations directly through a transmitter or recorder concealed on his person). To cast the problem in terms of the degree of intrusiveness confuses the issue and requires the courts to engage in a balancing process that hinders uniform fourth amendment analysis. The more pragmatic approach suggested by *Katz,* as we interpret that decision, is to treat the action of the Government indirectly by analyzing the interest of the individual on which that action intrudes.

interest of an individual in a particular situation:

> As the Court's opinion states, "the Fourth Amendment protects people, not places." The question, however, is what protection it affords to those people. Generally, as here, the answer to that question requires reference to a "place." *My understanding of the rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as "reasonable."* Thus a man's home is, for most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected" because no intention to keep them to himself has been exhibited. On the other hand, conversations in the open would not be protected against being overheard, for the expectation of privacy under the circumstances would be unreasonable. Cf. *Hester v. United States,* [265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898] *supra.*

389 U.S. at 361, 88 S.Ct. at 516. (Harlan, J., concurring). (Emphasis added.)

Under the decisions of the courts after *Katz,* the fourth amendment challenge of an individual may fall short in either of two situations. First, where he knowingly has exposed information to public scrutiny, the fourth amendment does not apply. *See, e. g., United States v. Miller,* 425 U.S. 435, 442–43, 96 S.Ct. 1619, 1623–1624, 48 L.Ed.2d 71 (1976) (bank records); *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (paint sample taken from the exterior of a car parked in a public lot); *Reporters Comm. for Freedom of the Press v. American Tel. & Tel.,* 593 F.2d 1030 (D.C.Cir.1978), *cert. denied,* 440 U.S. 949, 99 S.Ct. 1431, 59 L.Ed.2d 639 (1979) (records of long distance telephone calls); *United States v. Crowell,* 586 F.2d 1020 (4th Cir. 1978), *cert. denied,* 440 U.S. 959, 99 S.Ct. 1500, 59 L.Ed.2d 772 (1979) (garbage). Second, even where an individual has exhibited a subjective expectation that certain information will remain private, the fourth amendment will not apply unless society is prepared to recognize that expectation as legitimate. *See, e. g., Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978), where the Court said in note 12:

> Obviously, however, a "legitimate" expectation of privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as "legitimate".

*See, also, United States v. Botero,* 589 F.2d 430 (9th Cir. 1978), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979) (beeper in illegal drugs); *United States v. Washington,* 586 F.2d 1147, 1154 (7th Cir. 1978) (same). A defendant who asserts a fourth amendment challenge must meet both the subjective expectation and the legitimacy criteria.

*Katz* provides an analytic framework that is readily adaptable to the beeper problem. Two main questions need to be asked: (1) Did the Government violate the defendant's legitimate expectation of privacy when it *installed* the beeper? (2) Did *monitoring* the beeper violate the defendant's legitimate expectation of privacy? *See United States v. Bruneau,* 594 F.2d 1190, 1194 (8th Cir.), *cert. denied,* 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979); *United States v. Miroyan,* 577 F.2d 489, 492 (9th Cir.) *cert. denied,* 439 U.S. 896, 99 S.Ct. 258, 58 L.Ed.2d 243 (1978); *United States v. Pretzinger,* 542 F.2d 517, 520 (9th Cir. 1976); *United States v. Hufford,* 539 F.2d 32, 34 (9th Cir.), *cert. denied,* 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976). Each of these questions must be addressed in two steps: whether the defendant exhibited a subjective expectation of privacy and, if so, whether society is prepared to recognize that expectation as legally justified. *Katz v. United States, supra.*

The analytic framework of *Katz*, in our view, explains the vast majority of beeper cases decided to date. In the first group are cases where the courts have upheld the installation of beepers on the exteriors of cars and airplanes parked in areas lawfully accessible to Government agents. *E. g., United States v. Shovea*, 580 F.2d 1382 (10th Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979) (car parked on a public street); *United States v. Moore*, 562 F.2d 106, 111–12 (1st Cir. 1977), *cert. denied*, 435 U.S. 926, 98 S.Ct. 1493, 55 L.Ed.2d 521 (1978) (van parked in public lot); *United States v. Pretzinger*, 542 F.2d 517 (9th Cir. 1976) (airplane parked at a repair shop).[5] These holdings are explainable on the ground that a defendant who knowingly leaves his property in a place lawfully accessible to the public has exhibited no subjective expectation of privacy.

The second group consists of cases where the defendant subjectively expected the property to which the Government attached a beeper to be private, but where society does not recognize that expectation as legally justified. Cases where beepers have been installed in contraband fall into this category. *E. g., United States v. Washington*, 586 F.2d 1147, 1154 (7th Cir. 1978) (cocaine discovered in package mailed from the Canal Zone); *United States v. Dubrofsky*, 581 F.2d 208, 211 (9th Cir. 1978) (heroin discovered in incoming international mail); *United States v. Pringle*, 576 F.2d 1114, 1119 (5th Cir. 1978) (heroin discovered in

incoming international mail); *United States v. Emery*, 541 F.2d 887, 890 (1st Cir. 1976) (cocaine discovered in incoming international mail); *United States v. Perez*, 526 F.2d 859, 863 (5th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976) (television bartered for heroin).

With respect to the question whether monitoring the beeper constitutes a search, courts in a third group of cases have held that defendants exhibited no subjective expectation of privacy in information, such as a vehicle's course through public air space or over public roads, which is inherently public. *E. g., United States v. Bruneau, supra*, 594 F.2d at 1196–97 (airplane); *United States v. Miroyan, supra*, 577 F.2d at 492 (airplane); *United States v. Pretzinger, supra*, 542 F.2d at 520 (airplane); *United States v. Hufford, supra*, 539 F.2d at 34–35 (car). Several other courts have recognized a defendant has a reduced expectation of privacy in the location of a vehicle he is operating, but have found it unnecessary to decide whether the beeper surveillance in those cases constituted a search because probable cause and exigent circumstances justified the warrantless monitoring. *See, e. g., United States v. Shovea, supra*, 580 F.2d at 1387–88 (car); *United States v. Moore, supra*, 562 F.2d at 112–13 (van).

The fourth group[6] consists of cases in which the defendants exhibited subjective privacy expectations that the Government violated by monitoring the beepers, but in

---

5. *United States v. Holmes*, 521 F.2d 859, 864 (5th Cir. 1975), *affd. by an equally divided court en banc*, 537 F.2d 227 (1976) is the only circuit court decision to which we have been cited holding installation of a beeper on a van parked in a public lot constitutes a search. However, the Fifth Circuit has avoided following *Holmes* in subsequent cases by finding the installation justified by third party consent. *See, e. g., United States v. Cheshire*, 569 F.2d 887 (5th Cir.), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978); *United States v. Abel*, 548 F.2d 591 (5th Cir.), *cert. denied*, 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 273 (1977). *But cf. United States v. Cofer*, 444 F.Supp. 146, 149 (W.D.Tex.1978) (installation of a beeper inside an airplane constitutes a search).

6. There remains a fifth group of beeper cases that do not fit the foregoing analytic framework because they did not deal with the question whether the challenged beeper monitoring constituted a search. The search issue was found to be irrelevant in these cases because the beeper's installation and monitoring fell under the third party consent exception to the warrant requirement. *E. g., United States v. Bruneau, supra*, 594 F.2d at 1194 (rented airplane); *United States v. Miroyan, supra*, 577 F.2d at 493 (same); *United States v. Cheshire*, 569 F.2d 887, 888 (5th Cir.), *cert. denied*, 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978) (same); *United States v. Curtis*, 562 F.2d 1153 (9th Cir. 1977); *cert. denied*, 439 U.S. 910, 99 S.Ct. 279, 58 L.Ed.2d 256 (1978) (same); *United States v. Hufford, supra*, 539 F.2d at 34 (beeper installed in caffeine drum sold to defendants).

which the courts found no fourth amendment violations because those subjective privacy expectations were not legally justified. The contraband cases fall into this category. In addition, the Tenth Circuit in *United States v. Clayborne,* 584 F.2d 346, 350–351 (10th Cir. 1978), seems to have concluded a defendant has no legitimate expectation of privacy in the location of a clandestine laboratory, at least when it is situated in a commercial building rather than a home. By contrast, the First Circuit in *United States v. Moore, supra,* 562 F.2d at 113, held a defendant does have a legitimate expectation of privacy which is violated when the Government monitors a beeper installed in noncontraband property he takes into his home. *See also State of North Carolina v. Hendricks,* 43 N.C.App. 245, 258 S.E.2d 872, 26 Cr.L.Rep. 2182 (1979) (following *Moore*).

■ In the present case, the Government's act of installing the beeper in the can of chemicals violated none of the privacy expectations of the defendants. So long as the can of chemicals was in the lawful possession and control of the Government, the defendants could not reasonably expect it to remain inviolate.[7] *See United States v. Hufford, supra,* 539 F.2d at 34. If there was a search in the present case, it was in the monitoring that occurred after the Government sold the chemicals to the defendants.

The second question, whether the Government violated the defendants' legitimate privacy expectations by monitoring the beeper's signals after ownership and possession of the chemicals had passed to the defendants, is more troublesome. Applying the two part *Katz* test, we agree with the district court that the monitoring at issue under the facts and circumstances of this case violated protected privacy rights and, therefore, had to meet fourth amendment requirements.

The defendants satisfied the first portion of the *Katz* test by exhibiting a subjective expectation of privacy with respect to the drum of chemicals containing the beeper. Defendant Gomez loaded the chemicals into a car[8] and drove to an apartment at 7010 E. Warren in Detroit. Government agents observed the chemicals being moved into the complex and confirmed their observation by monitoring the beeper's signals. Three days later they discovered the chemicals had been moved to a locked storage compartment in the basement of another apartment complex at 11750 Martindale North in Detroit. The chemicals remained in the storage compartment until they were seized pursuant to a warrant 65 days later. From the time they moved the chemicals into the Warren apartment complex on May 7 to the day of the seizure, July 14, the defendants maintained the chemicals in private areas that were shielded from public view and protected against warrantless

---

**7.** Furthermore, since the Government owned the chemicals at the time it installed the beeper, its consent obviated any potential warrant requirement. However, for the reasons stated in part III of this opinion, the consent of the Government could not satisfy the fourth amendment after ownership and control of the chemicals passed to the defendants. *See United States v. Moore, supra,* 562 F.2d at 111; *United States v. Clayborne, supra,* 584 F.2d at 349 & n. 1. The Government's proposed expansion of the consent exception would allow warrantless installation and monitoring of beepers or even radio transmitters in any property the Government might decide to sell.

**8.** The record is not clear whether the drum was transported in the trunk of the car where it would have been hidden from view and, absent some independent justification, protected

against warrantless search and seizure. Had the chemicals been transported in the trunk and had the Government relied solely on the beeper's signals in following the car, we would be faced with a decision as to whether the monitoring fell under the rationale of the automobile and airplane surveillance cases. The First Circuit in *United States v. Moore, supra,* 562 F.2d at 111 n. 2 expressed the view that it would. The automobile and airplane cases were decided on the ground that those vehicles by their very nature are exposed to public view during operation. By contrast, the contents of an automobile trunk ordinarily are known only to the operator and passengers of the car. In any event we need not address that issue in this case, because the record establishes that defendant Gomez was followed visually as well as electronically to the apartment complex.

governmental searches. This being so, they exhibited an expectation of privacy in the location of the chemicals which, but for the beeper surveillance, would have been entirely justified.

The question then becomes whether the subjective expectation of the defendants is one the law is prepared to protect. The United States urges the court to extend the rationale of the contraband cases to include chemicals that, while themselves legal,[9] potentially are precursors of phencyclidine, a Schedule II Controlled Substance. The First Circuit rejected a similar argument in *United States v. Moore, supra,* 562 F.2d at 111:

> The Government may be trying to expand that principle to include the warrantless insertion of a beeper in legally possessed non-contraband substances whose probable use is to make an illegal drug. But there is a clear line of demarcation between, on the one hand, contraband and other items, such as stolen goods, whose possession is illegal, and on the other, goods, whatever their suspected use, whose possession is legal. The narcotics peddler in whose heroin a beeper is planted has no privacy interest in the substance; but the same is not so of legally-possessed substances into which a beeper is placed, even if these are destined later to be used in the commission of a crime. We would limit the authority of cases such as *Emery* to concealment of beepers in contraband substances or, at least, in items which are part and parcel of an ongoing criminal transaction (*United States v. Perez, supra,* beeper concealed in TV set taken in exchange for sale of heroin.)

We agree with the reasoning of the First Circuit. The rationale of the Government's argument would authorize warrantless beeper surveillance of laboratory equipment, handguns, or any other legitimately owned item the Government suspected would be used to commit a crime. The fourth amendment contains no such exception. If the Government reasonably suspects non-contraband items will be used for criminal purposes, presumably it can articulate sufficient grounds to convince a neutral magistrate to issue a warrant authorizing beeper surveillance of those items. For fourth amendment purposes, there is a clear distinction between contraband and other property.

In essence, the question before the court is whether the law is prepared to recognize as legitimate an individual's expectation of privacy with respect to what he does in private with personal property he has a right to possess. The question is its own answer. Beeper surveillance of non-contraband personal property in private areas trenches upon legitimate expectations of privacy and constitutes a search or seizure within the meaning of the fourth amendment.

### III

Although the fourth amendment is applicable in this case, the Government argues that no warrant was required because it, as owner of the chemicals, consented to the installation and monitoring of the beeper in the chemicals. We observe that the cases in which this argument has been accepted involved monitored goods owned by a third party.[10] By contrast, in this case, there was no third party from whom the Government obtained consent prior to initiating the surveillance. Rather it appears fairly clear that the Government sold, or appeared to sell, the chemicals to defendants Bailey and Gomez. The Government could consent to the warrantless installation and monitoring only so long as it had possession of the chemicals. At the point of transfer, any governmental consent became ineffectual.[11]

### IV

As indicated, the installation and monitoring of the beeper under the facts of

---

**9.** In the present case, District Judge Churchill found explicitly that the can of chemicals which contained the beeper was not contraband per se. *United States v. Bailey,* 465 F.Supp. 1138, 1140 (E.D.Mich.1979).

**10.** See cases cited in n. 6, *supra.*

**11.** See note 7, *supra.*

this case was a "search" or "seizure" and had to meet fourth amendment standards. Ordinarily, this means the surveillance must have been authorized by a warrant based on probable cause and issued in advance. In this case, a warrant did issue in advance. Probable cause is not an issue. The question is whether the warrant satisfied fourth amendment requirements even though it did not place a time limit on the beeper surveillance. The district court concluded that the absence of a time limit made both the warrants ineffectual. We agree.

Although we have been cited to no authority directly in point, two cases are relevant to our decision. In *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the Supreme Court invalidated the New York wiretap statute because the statute, among other things, authorized a two month surveillance period based on a single showing of probable cause; permitted extensions of two months of the initial surveillance without requiring a new showing of probable cause; and placed no termination date on the eavesdrop once the conversation sought had been seized. 388 U.S. at 59–60, 87 S.Ct. at 1883–1884. These procedures were held to offend the fourth amendment because they authorized "the equivalent of a series of intrusions, searches, and seizures pursuant to a single showing of probable cause." 388 U.S. at 59, 87 S.Ct. at 1883. In *United States v. Lamonge*, 458 F.2d 197 (6th Cir.), *cert. denied*, 409 U.S. 863, 93 S.Ct. 153, 34 L.Ed.2d 110 (1972), this court found the absence of an issuance date on an order purporting to authorize wiretapping "for a period of eight days from the date of this order" made the order unlimited in duration by its own terms. Citing *Berger*, we held the order "apparently authorized a wiretap for an

unreasonable length of time which rendered it invalid." 458 F.2d at 199.

These cases convince us that a warrant which places no time limit on the search or seizure it purports to authorize is invalid. *Berger* indicates the fourth amendment requires a showing not only of probable cause, but of *present* probable cause. *See* 388 U.S. at 59–60, 87 S.Ct. at 1883–1884. Under *Lamonge*, the temporal relationship between the Government's showing of probable cause and the search and seizure being authorized must appear on the face of the warrant. Unless the warrant contains a time limit, it cannot assure the reasonableness of the search it purports to authorize; therefore, it does not satisfy the requirements of the fourth amendment.

In this case the surveillance continued for seventy days. Our review of the record indicates the monitoring encompassed two different apartment complexes. In fact, it was only because the beeper signal was weakening that the Government filed another affidavit and obtained a warrant authorizing agents to enter the second apartment complex, pinpoint the drum's location and seize the homing device and chemicals. Given the absence of a termination date in the warrant, the surveillance in this case could have continued ad infinitum.[12]

Traditionally the touchstone of fourth amendment analysis has been "reasonableness." Precisely what is reasonable varies from case to case. If the warrant in the present case had included a reasonable termination date, it would have complied with the requirements of the fourth amendment. However, no time limit was specified. Because the warrant permitted surveillance of the movements of defendants for an indefinite period of time, it authorized an unreasonable search, and, therefore, was invalid.

---

12. In response to a stipulation that some beepers stay operative longer than six months, one district court commented:

> While the intrusiveness may be less than that of wiretapping, the Court cannot countenance the potentially unlimited duration of this type of surveillance. Citizens have a right to think that the government will not track them for months on end by resort to the latest electronic gadgetry.

*United States v. Cofer*, 444 F.Supp. 146, 149 (W.D.Texas 1978).

Nor does the fact that the surveillance lasted seventy days rather than many months render the omission harmless. The statute and warrant in *Berger* authorizing unrestricted interception up to sixty days were invalid even though the wiretap was terminated after thirteen days. 388 U.S. at 100, 87 S.Ct. at 1904 (Harlan, J., dissenting).

In our view, the issuance of a search warrant without a termination date seriously undermines the very fourth amendment interests the search warrant requirement is designed to protect. To hold that a "beeper warrant" passes constitutional muster despite the absence of a termination date would exalt law enforcement needs over rights of individual privacy. Requiring that beeper surveillance warrants contain time limitations is not too high a price to pay for the protection of citizens from the invasion of privacy inherent in having their every movement followed by an electronic "eye."

### V

Having held that the warrants were invalid because they did not contain termination dates, we now decide whether this infirmity requires application of the exclusionary rule. In granting the motion to suppress, the district court held that since the first warrant was invalid because it contained no time limit, the second warrant and the evidence seized were "the direct fruits of the unauthorized use of the beeper." 465 F.Supp. at 1141. The Government contends that the omission of a cut-off date in a warrant authorizing beeper surveillance is merely a procedural violation. As such, argues the Government, unless the defendants can show that the omission of a time limit prejudiced them, or that the federal agents intentionally caused this error, the exclusionary rule is inapplicable. We agree with the district court on this issue.

The courts have been careful to apply the judicially created exclusionary rule only when its underlying purposes will be served. Recognizing that the rule denies the Government the use of valuable evidence, many courts have refused to grant suppression motions where to do so is unlikely to deter future fourth amendment violations.[13] This court has endorsed such a view where

it is unlikely the deterrent purpose of the exclusionary rule will be advanced.[14]

However, the Supreme Court has articulated a second rationale for the exclusionary rule: the "imperative of judicial integrity" with respect to the administration of justice in the federal courts. *See Elkins v. United States*, 364 U.S. 206, 222–23, 80 S.Ct. 1437, 1446–1447, 4 L.Ed.2d 1669 (1960) holding that evidence obtained by state officers through an unconstitutional search is not admissible over objection in a federal criminal trial. The federal courts have a separate and distinct responsibility to the exclusionary rule so long as it serves as a remedy for fourth amendment violations. This second purpose of the exclusionary rule should not be forgotten or ignored. Just as it is important to minimize frustration of law enforcement efforts by refining the exclusionary rule to avoid overkill, it is equally crucial that the judiciary protect fourth amendment rights and interests.

In support of its contention that the exclusionary rule should not be applied in the present case, the Government relies on *Searp, supra* (n. 14). *Searp* and the present case are fundamentally different. In *Searp*, an undeniably valid search warrant was executed at night instead of during daylight hours. This violated Fed.R. Crim.P. 41(c)(1) which requires specific authorization upon a showing of reasonable cause to execute a warrant at times other than daytime. Searp argued that the Rule 41 violation required suppression of the evidence seized in the nighttime search. This court concluded that since the circumstances clearly justified a night search and the violation of Rule 41 could not have been the result of bad faith on the part of the officers, the application of the exclusionary rule was not justified under the facts of that case.

---

13. *See, e. g., United States v. Ceccolini*, 435 U.S. 268, 275, 98 S.Ct. 1054, 1059, 55 L.Ed.2d 268 (1978); *Stone v. Powell*, 428 U.S. 465, 489–90, 96 S.Ct. 3037, 3050, 49 L.Ed.2d 1067 (1976); *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Alderman v.*

*United States*, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969).

14. *United States v. Searp*, 586 F.2d 1117 (6th Cir.), *cert. denied*, 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1978).

In the present case the warrant is open-ended. It provides no assurance that the Government will not continue to monitor the beeper's signals long after its probable cause to do so has ceased to exist. Indeed, under the phraseology of the warrant in the present case, nothing other than technological problems would prevent the beeper from revealing its location forever.

The Government argues further that suppression is an inappropriate remedy because the Government acted without deliberate intention to violate the law. However, the fourth amendment requires more than good faith; it requires observance of procedures designed to ensure that the search or seizure authorized by the warrant is reasonable.[15] Of course, when the Government acts in bad faith by deliberately violating the law, the exclusionary rule should be applied. However, the Government's lack of bad faith does not, at least under the facts of this case, save its illegally obtained evidence from suppression.

We think electronic surveillance has such a potential for abuse that the Government must be held accountable for its use. To hold the exclusionary rule inapplicable under the facts of this case would place fourth amendment protections solely under the control of the Executive Department of the Government and would constitute judicial abdication. Accordingly, we hold that the application of the exclusionary rule by the district court in the present case was correct.

We emphasize two things that this opinion does *not* hold:

(1) This opinion does not establish a blanket rule that beeper monitoring of individual movement *always* brings the requirements of the fourth amendment into play. Judge Churchill said: "It is not difficult to imagine multiple exigent circumstances which would justify the use of beepers without warrants." 465 F.Supp. at 1139–40. As we have undertaken to demonstrate in Part II of this opinion, there are many situations in which beeper surveillance violates no legitimate expectations of privacy and, therefore, does not rise to the level of a "search" or "seizure." The analytic framework suggested by *Katz* provides a means of separating meritorious from non-meritorious fourth amendment claims. In the present case, that analysis leads us to conclude that a warrant was required. Depending on their facts, other cases may require different results.

(2) The Government is not precluded from using beepers in law enforcement. Where beeper surveillance would violate an individual's legitimate expectations of privacy, the Government needs only to obtain a valid warrant containing a reasonable time limit in order to comply with the requirements of the fourth amendment.

Affirmed.

KEITH, Circuit Judge, concurring.

I concur in the result reached by Judge Phillips in the majority opinion, and the reasoning in Parts III, IV and V[1]. However, because the beeper represents another step in the advance toward an Orwellian future, I write separately to emphasize the parameters of the privacy interests protected by the Fourth Amendment.[2] In my

---

**15.** In *United States v. Scott*, the Supreme Court held that the focus of inquiry for determining whether federal agents reasonably satisfied the minimum requirements of Title III is to be upon the agents' actions, *not their motives*, or intent, in conducting the surveillance. 436 U.S. 128, 135–38, 98 S.Ct. 1717, 1722–1724, 56 L.Ed.2d 168, *reh. den.*, 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150 (1978).

**1.** I express no opinion on the extent to which exigent circumstances would eliminate the warrant requirements when electronic surveillance is involved.

**2.** The Fourth Amendment provides that:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place ·to be searched, and the persons or things to be seized.

Although *United States v. Katz*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) provided a new analytical framework within which governmental intrusions would be examined, *Katz* implied that property interests would no longer

view, the determination of whether this governmental intrusion—use of the beeper—unreasonably invades one's privacy turns on the degree of privacy not only recognized by, but necessary to, members of contemporary society. From this perspective it is apparent that the majority's holding that Fourth Amendment protection arose only when the non-contraband properties came to rest in an apartment complex is too narrow a reading of the degree of privacy the law should be prepared to accept. Implicitly, the majority accepts the proposition that our idea of freedom is offended and necessarily shrinks at the continual monitoring of personal movement. Other circuits have accepted this same proposition.

In the Fifth Circuit's opinion in *United States v. Holmes*[3] the installation of the beeper was held to constitute a search.[4] While not explicitly stated, the underlying rationale for the Fifth Circuit's holding in *Holmes* is an acceptance of the idea that privacy of movement is worthy of constitutional protection. *Holmes* states:

No rational basis occurs to us for distinguishing the violation of the expectancy of privacy involved in the installation of a "beeper" on a car, in order to *trace its movement*, from the placing of a tap on the outside of a telephone booth in order to overhear and record conversations . . . . (emphasis added)

. . . A person has a right to. expect that when he drives his car into the street, the police will not attach an electronic surveillance device to his car in order to track him. Although he can anticipate visual surveillance, he can reasonably expect to be "alone" in his car when he enters it and drives away.[5]

Similarly, the First Circuit in *United States v. Moore*[6] acknowledged that the defendants have a reasonable expectation of privacy in their movements. *Moore* concluded that the use of a beeper to maintain surveillance of a vehicle on public roads is less of an invasion than the monitoring of a beeper hidden within chemicals located in a residence. However the recognition of the defendant's "privacy of movements" led the First Circuit to rule that law enforcement officials had to show probable cause before the beeper could be installed. *Moore* held:

"[W]hile the lessened expectancy of privacy associated with motor vehicles justifies the use of beepers without a warrant to track vehicles, this can be done only if the officers have probable cause at the time."[7]

The underpinning of this aspect of the *Moore* holding is that a [driver] "properly can expect not to be carrying around an uninvited device that would continuously signal his presence".[8] I agree with the First Circuit that the "intrusion cannot be written off as non-existent" merely because the electronic device is attached to a vehicle on public roads, which is ordinarily subject to public scrutiny.

In contrast, the majority in this case appears to limit application of the Fourth Amendment to those instances where the beeper has been attached to personal property a citizen has a right to possess. Today's failure to recognize that modern society has evolved to the point that a person's movements "belong" to her is the beginning

---

be the *exclusive* test of Fourth Amendment protection. If the language of the Fourth Amendment means anything, to be secure in one's person" is different than to be secure in one's personal "effects". I perceive the use of the beeper as violating the *person's* movements, the majority gives more emphasis to the fact that only personal property (an effect) was attached.

**3.** 521 F.2d 859, 864 (5th Cir. 1975), *vacated and district court decision aff'd by an equally divided court en banc*, 537 F.2d 227 (1976).

**4.** My agreement with the majority that the monitoring of the beeper triggers Fourth Amendment protection does not require that the analysis in *Holmes* need be summarily rejected. *See* n. 5 in the majority opinion.

**5.** 521 F.2d at 865 and 866.

**6.** 562 F.2d 106 (1st Cir. 1977), *cert. denied*, 435 U.S. 926 (1978) (van parked in public lot).

**7.** *Id.* at 112–113.

**8.** *Id.*

of the encroachment warned against in *Boyd v. United States*, 116 U.S. 616, 635, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886).[9]

Given the vast array of electronic surveillance now available to law enforcement officials, it is necessary to clearly articulate the boundaries of privacy. Accordingly, I would hold that privacy of movement itself is deserving of Fourth Amendment protections.

A meaningful definition of privacy should include the control of the intimacies of personal *identity*. Obviously this control begins with one's body and at the very least extends to those elements which constitute one's existence as a sentient being. In this regard, I think an individual may legitimately expect to live in this society without fear that the government may be silently following his every movement. Sometimes we do not care if others know where we go or what we do. If someone follows us to work or to the grocery store, we may not be concerned. But each of us goes places and does things that we would prefer to keep private. Ordinarily we can protect our privacy by insuring that we are not being followed, and that others do not know where we are going. The beeper destroys our ability to protect the privacy of our movement.

In *United States v. Finazzo*[10], Judge Merritt observed that "[p]rivacy is destroyed when monitored."[11] That is the heart of the matter. Privacy, whether it be of conversation or *movement*, is destroyed when monitored. The majority carefully framed the question as whether the law is "prepared to recognize as legitimate an individual's expectation of privacy with respect to what he does in private with personal property he has a right to possess." I do not disagree with its holding that the law does recognize the foregoing as being within the protection of the Fourth Amendment. However, as indicated above, I think the use of electronic surveillance by government officials necessitates an explicit holding that privacy of movement is itself protected by the Fourth Amendment.[12]

---

9. It may be that it is the obnoxious thing in its mildest and least repulsive form, but illegitimate and unconstitutional practices get their first footing in that way, namely by silent approaches and slight deviations from legal modes of procedures. 116 U.S. at 635.

10. 583 F.2d 837 (6th Cir. 1978), *vacated and remanded*, 441 U.S. 929, 99 S.Ct. 2047, 60 L.Ed.2d 657 (1979).

11. *Id.* at 841.

12. I stress that by recognizing a reasonable expectation of privacy in "beeper" cases, I would only impose reasonable burdens on the government. I would not prohibit all beeper searches, just as the Supreme Court did not bar all wiretapping in *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and *United States v. Katz, supra*, I would simply prefer that the government justify its conduct under the Fourth Amendment's reasonableness requirements.

In this case the government sought unbridled authority to install "beepers" for the purpose of monitoring the movement of people and their possessions. I think it clear that this violates one's reasonable expectation of privacy. Contrast *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220, 99 S.Ct. 2577 (1979) (no reasonable expectation of privacy in the telephone numbers one dials; "pen register" surveillance not subject to the Fourth Amendment).