[Cite as *State v. Sullivan*, 2011-Ohio-4967.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2010-CA-52 |
| MONTIE E. SULLIVAN | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal appeal from the Fairfield County
Court of Common Pleas, Case No. 10-CR-
0043

JUDGMENT:                  Reversed and Remanded

DATE OF JUDGMENT ENTRY:    September 23, 2011

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

GREGG MARX                            MARK P. ORT
Assistant Prosecutor                  13297 Rustic Drive N.W.
239 W. Main Street, Ste. 101          Pickerington, OH 43147
Lancaster, OH 43130

*Gwin, P.J.*

{¶1} Appellant Montie E. Sullivan appeals the July 22, 2010 Judgment Entry of the Fairfield County Court of Common Pleas overruling his motion to suppress. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE[1]

{¶2} In January 2010 law enforcement officers from Franklin County, Ohio were investigating a series of home break-ins in the area. Detectives learned that all of the home invasion robberies had similarities. Each robbery involved firearms and in some firearms had been discharged. Each robbery was a home invasion. Each robbery occurred in a suburban or rural area. The robberies occurred in a relatively short time span. Although the robberies occurred in three counties, the counties are contiguous and the robberies occurred in the same region. Victims and/or witnesses described the persons committing the robberies as two African-American males in a white car.

{¶3} The American Automobile Association (AAA) was called to service a disabled white Honda Civic. AAA furnished the make, model and year of the white vehicle. The tow truck driver believed that he was going to service a white Honda Accord; however, when the tow truck driver arrived he found a stolen green Toyota Camry with the engine running crashed into another vehicle. The AAA tow truck driver alerted law enforcement. Upon investigation it was discovered that the car had been stolen in a home invasion robbery and the AAA card that had been used to make the service call had been stolen in a different home invasion robbery. Law

---

[1] A Statement of the Facts underlying appellant's original conviction is unnecessary to our disposition of this appeal. Any facts needed to clarify the issues addressed in appellant's assignment of error shall be contained therein.

enforcement then used LEADS and motor vehicle registration data to discover that the white Honda Civic was registered to appellant.

{¶4} Corporal Richard Minerd of the Franklin County Sherriff's Department used a data base of "associates" and determined that appellant had used an address, 2399 Hudson Bay Way, Columbus, Franklin County. Corporal Minerd had obtained a cell phone search warrant to track appellant's location.

{¶5} Beginning January 11, 2010, detectives monitored and followed the vehicle when it was driven by appellant and/or co-defendant David White, who is a relative of appellant[2]. Monitoring and tracking the vehicle was a difficult task due to the mobility of the vehicle. Detectives monitored the vehicle for three days, and no criminal activity was observed.

{¶6} On January 14, 2010, Corporal Minerd sought the assistance of the Franklin County Sheriff's Department's undercover unit to employ electronics as a surveillance tool. Corporal Minerd and an undercover officer went to an address of an associate of appellant where they observed the white Honda Civic parked in the parking lot of an apartment complex. Corporal Minerd and the undercover officer drove up to the white Honda Civic, and the undercover officer went to the white Honda Civic and placed a GPS unit under a bumper of the white Honda Civic. The GPS unit attached to the white Honda Civic sent information which permitted Corporal Minerd to track the movement of the vehicle. Corporal Minerd was able to use a laptop computer to call up a map of the area where the white Honda civic was located. The computer would indicate the block of any given road or street where the vehicle was located, its speed and direction of

---

[2] David White has filed a separate appeal in Fairfield App. No. 2010 CA 60.

travel, and the date and time. Corporal Minerd was able to monitor the white Honda Civic movement in "real time". Corporal Minerd did not seek a search warrant before placement of a GPS tracking unit under the bumper of appellant's white Honda Civic.

{¶7} In the early afternoon of January 23, 2010, Corporal Minerd was at home when he decided to observe the location and movement of the white Honda Civic with the laptop computer.  While following these movements, Corporal Minerd consulted with the Fairfield County Sheriff's Department and he learned that a home invasion robbery burglary had been committed on Bickel Church Road which was in the vicinity where the appellant's car had been tracked. Appellant's car was subsequently tracked until it arrived back at his Hudson Bay Way home. When law enforcement arrived, appellant and co-defendant David White ran out the back door. The property taken during the Bickel Church Road home invasion robbery was recovered from the white Honda Civic.

{¶8} Appellant was subsequently arrested and then indicted on charges stemming from the series of home invasion robberies which had occurred during the preceding several weeks. Specifically, appellant was indicted on one count of Improperly Discharging Firearm at or into Habitation, in violation of R.C. 2923.161(A)(1) with two firearm specifications to the count in violation of R.C. 2941.145; one count of Aggravated Burglary, in violation of R.C. 2911.11(A)(2) with two firearm specifications to the count in violation of R.C. 2941.145, one count of Aggravated Robbery, in violation of R.C. 2911.01(A)(1) with two firearm specifications in violation of R.C.2941.145, and one count of Grand Theft, in violation of R.C. 2913.02 with one firearm specification to the count in violation of R.C. 2941.145.

{¶9} Appellant filed a motion to suppress evidence, a supplemental motion to suppress evidence and an additional brief. After conducting an evidentiary hearing on the motion, on July 22, 2010 the trial court issued a written entry overruling appellant's motion.

{¶10} On October 19, 2010, appellant appeared with counsel and entered no contest pleas to Count One, Improperly Discharging Firearm at or into Habitation, a specification pursuant to R.C. 2941.145 and Count Two, Aggravated Burglary. Facts were read into the record and the trial court found appellant guilty and dismissed the remainder of the Indictment on the State's motion.

{¶11} Appellant was sentenced to seven years in prison on Count One to be served consecutively to a three year term of incarceration for the firearm specification to be served consecutively to a nine year prison sentence as to Count Two.

{¶12} It is from the trial court's July 22, 2010 Judgment Entry overruling his motion to suppress that appellant has timely appealed raising the following two Assignments of Error:

{¶13} "I. THE TRIAL COURT ERRED WHEN IT OVERRULED THE DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE THAT WAS OBTAINED FROM THE UNLAWFUL PLACEMENT OF A GPS TRACKING DEVICE AND THE TRACKING BY A GPS MONITORING DEVICE IN VIOLATION OF THE DEFENDANT'S RIGHTS TO BE FREE FROM AN UNWARRANTED SEARCH UNDER THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

**{¶14}** "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED THE APPELLANT TO CONSECUTIVE SENTENCES THAT CLOSELY APPROXIMATED THE MAXIMUM ALLOWABLE SENTENCE FOR EACH OFFENSE."

I.

**{¶15}** Appellant's First Assignment of Error relates to the propriety of the trial court's overruling of his motion to suppress. Specifically appellant maintains that it was unlawful for law enforcement officers to attach a GPS tracking device to the exterior of his car in the absence of exigent circumstances without first obtaining a warrant. Appellant further contends that subsequent tracking of the GPS device's signal violated his legitimate expectation of privacy.[3]

### A. STANDARD OF REVIEW

**{¶16}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 797 N.E.2d 71, 74, 20030-Ohio-5372 at ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap* (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v.*

---

[3] We note that these issues are presently before the Ohio Supreme Court in the case of *State v. Johnson*, 190 Ohio App.3d 750, 944 N.E.2d 270, 2010-Ohio-5808, appeal allowed 128 Ohio St.3d 1425, 943 N.E.2d 572, 2011-Ohio-1049(Table No. 2011-0033). We further note that the United States Supreme Court has granted certiorari to review the Fourth Amendment implications in the attachment and monitoring of a GPS tracking device. See, *U.S. v. Maynard(* D.C.Cir.2010), 615 F.3d 544, *cert granted U.S. v. Jones*, --- S.Ct. ----, 2011 WL 1456728, 79 USLW 3610, 79 USLW 3718, 79 USLW 3727 (U.S. Jun 27, 2011) (NO. 10-1259, 10A760).

*Long* (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1; *State v. Medcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268. However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539; See, generally, *United States v. Arvizu* (2002), 534 U.S. 266, 122 S.Ct. 744; *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657. That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review. *Ornelas*, supra.  Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

## B. BACKGROUND

**{¶17}** We begin our analysis by reviewing the decision which has been accepted for review by the Supreme Court.  In of *State v. Johnson*,190 Ohio App.3d 750, 944 N.E.2d 270, 2010-Ohio-5808, appeal allowed 128 Ohio St.3d 1425, 943 N.E.2d 572, 2011-Ohio-1049 (Table) over a number of months law enforcement had received information Johnson might be involved in the trafficking of cocaine. The person told police he believed Johnson would acquire more cocaine in the future. Without a warrant, Hackney surreptitiously placed a GPS tracking device underneath the van. 190 Ohio App.3d at 753, 944 N.E.2d at 272, 2010-Ohio-5808 at ¶ 2-3.

**{¶18}** Six days after placing the device on Johnson's van, police discovered from GPS records the van had traveled from Ohio to Illinois. Id. at ¶5.  While the van was in Chicago officers conducted visual surveillance in addition to monitoring its location with the tracking device. Id. at ¶ 6-7.

{¶19} The van was followed from a shopping center to a private residence in suburban Chicago. Johnson and another man, Otis Kelly, were observed leaving the private residence in the van and in a car respectively. The agent followed Johnson and Kelly from the private residence in suburban Chicago into Ohio.

{¶20} Police first waited at the state border for the van and car to come into Ohio. However, near Harrison, Indiana the van exited the expressway while the car continued into Ohio where it continued to be followed. Police were able to maintain monitoring of the van through use of the GPS device placed on it even though they had lost visual surveillance. With the assistance of the GPS, Butler County Sheriffs were able to recover visual surveillance as the van reentered the expressway.

{¶21} The investigating officers ordered a patrol car to conduct a "probable cause" stop of the van driven by Johnson. Following the order, a patrol car pulled in behind Johnson and in short time conducted a stop of the van. The basis for the stop was reportedly for an "improper change of course." The van was physically searched. The van was then driven to a second location. Johnson was placed in the back seat of a police car and eventually moved from the "traffic stop" location to a new location for additional investigation. No contraband was ever located in the van.

{¶22} Otis Kelly was driving the car traveling from Illinois to Ohio. He was the subject of a "traffic stop" at another location. Johnson was taken from the place where he "committed the traffic violation" to where Kelly and police were located. It was then police searched Kelly's car and found cocaine hidden in a secret location in Kelly's car.

{¶23} However, during the search, Johnson made incriminating statement to the officers while seated in the back seat of the police car. Id. at ¶13. After being

transported to the station and re-Mirandized, Johnson again confessed his involvement in the cocaine trafficking scheme. He was subsequently indicted on single counts of trafficking in cocaine, possession of cocaine, and having weapons while under disability.

{¶24} Johnson filed a Motion to Suppress the information obtained from the use of the GPS device and any additional information and evidence which was obtained as a result of police action based on information obtained from the GPS tracking device. Following a hearing, the trial court overruled the motion. Johnson entered a No Contest plea.

{¶25} On appeal Johnson first argued that the trial court erred by not granting his motion to suppress regarding the placement of the GPS device without first obtaining a warrant. The Court of Appeals rejected this argument finding that placing the GPS on the van and monitoring its movement did not constitute a search or seizure under either the federal or Ohio constitutions. The court based this ruling upon finding no reasonable expectation of privacy in the exterior of a car. The court found Johnson did not produce any evidence that demonstrated his intention to guard the undercarriage of his van from inspection or manipulation by others. 190 Ohio App.3d at 757, 944 N.E.2d at 274, 2010-Ohio-5808 at ¶25.

{¶26} Johnson next argued a search and seizure also occurred because law enforcement was able to track the van's movement and collect information regarding where Johnson traveled and where his van was located on any given occasion. Id. at ¶27. The court rejected this argument in part because more importantly, the information gathered from the GPS device shows no more information than what detectives could have obtained by visual surveillance. Id. at ¶34. The court rejected Johnson's

arguments that other courts have found the surveillance to be a search which requires a warrant prior to initiation by finding "each relied on a state constitution that differed from or offered greater protections that those guaranteed by the Fourth Amendment. Ohio's constitution, however, does neither." Id. at ¶44.

**{¶27}** We next begin the review of the case at bar by first noting that a "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property. *United States v. Jacobsen* (1984), 466 U.S. 109, 113, 104 S.Ct. 1652, 1656. In assessing when a search is not a search, the Court has adapted a principle first enunciated in *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, A "search" does not occur—even when its object is a house explicitly protected by the Fourth Amendment—unless the individual manifested a subjective expectation of privacy in the searched object, and society is willing to recognize that expectation as reasonable. *Kyllo v. United States* (2001), 533 U.S. 27, 32-33, 121 S.Ct. 2038, 2042. (Citing *Katz v. United States* (1967)*,* 389 U.S. 347, 88 S.Ct. 507. (Harlan, Justice concurring).

**{¶28}** The central issue of this appeal is thus whether, absent exigent circumstances, a warrant issued with judicial approval is required before governmental agents may attach to a privately owned vehicle, without consent of one entitled to give it, a GPS or electronic tracking device.

**{¶29}** To resolve this conundrum, "[t]wo main questions need to be asked: (1) Did the Government violate the defendant's legitimate expectation of privacy when it installed the [GPS tracking device]? (2) Did monitoring the [GPS tracking device] violate

the defendant's legitimate expectation of privacy?" *United States v. Bailey* (6th Cir 1980),

628 F.2d 938, 941. (Citations omitted).

**{¶30}** We respectfully disagree with our brethren in the Twelfth Appellate District.

We find for the reasons which follow we conclude that under the facts of this case a

warrant[4] was required before placing the GPS tracking unit on the suspect vehicle and

to continuously monitor the tracking signal.

## C. ATTACHMENT OF THE GPS TRACKING DEVICE TO THE EXTERIOR OF THE SUSPECT VEHICLE.

**{¶31}** In the case at bar, a single police officer after conducting visual

surveillance for approximately three days and observing no suspicious activity

unilaterally decided to attach a GPS tracking device to a suspect's vehicle. The purpose

of installing this device was to catch the suspect in the act of committing a home

invasion type burglary. The officer candidly testified that his department does not have a

written protocol governing the attachment of wireless tracking devices to a suspect's

motor vehicle. (T. April 23, 2010 at 30). Rather, he had been informed by members of

the undercover drug team that because the device is not hardwired to the suspect's

vehicle he was not required to justify his decision by presenting facts sufficient to show

probable cause to a neutral and detached magistrate. (Id. at 30-31; T. May 27, 2010 at

53). The officer conceded during his testimony that he did not request a warrant before

placing the device on the suspect's vehicle because he did not believe he had probable

cause sufficient to obtain a search warrant. He further admitted that no exigent

---

[4] Of course, established and well-delineated exceptions to the warrant requirement would apply.

circumstances were present that would prevent him from obtaining a warrant. (T. April 23, 2010 at 76).

{¶32} The device attached to appellant's vehicle was approximately two inches by four inches and one inch thick. (T. April 23, 2010 at 26). The device is attached to the vehicle by means of six small magnets. (Id.) The device is self-powered by attaching a battery pack. (Id.). The battery pack gives the unit a longer functioning life-span. (Id.) The device comes with software which is loaded on a laptop computer. The officer logs onto the computer which then displays a mapping system containing the area, including street names.  The suspect vehicle is depicted as a black dot. (Id. at 28). The software also displays the date, time and the speed at which the suspect vehicle is traveling. (Id.). The software permits the officer to view the events in "real-time".  The device does not display exact addresses; rather it will display the block in which the vehicle is traveling. (Id. at 35). The officer can download the data to create a historical record of the suspect vehicle's travel. (Id. at 77-78).   The GPS unit used in the case at bar did not have a range limitation. (Id. at 78).

{¶33} The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer.

{¶34} The United States Court of Appeals for the Sixth Circuit has cogently summarized the cases dealing with the warrantless installation and tracking of a GPS-type device by law enforcement officers.  *United States v. Bailey* (6th Cir 1980), 628 F.2d 938.

**{¶35}** In the first group are cases where the courts have upheld the installation of GPS tracking devices on the exteriors of cars and airplanes parked in areas lawfully accessible to Government agents. 628 F.2d at 942. (Citations omitted). The court found these cases were explainable on the ground that a defendant who knowingly leaves his property in a place lawfully accessible to the public has exhibited no subjective expectation of privacy.[5] The second group consists of cases where the defendant subjectively expected the property to which the Government attached a GPS tracking devices to be private, but where society does not recognize that expectation as legally justified. Cases where GPS tracking devices have been installed in contraband fall into this category. Id. at 942. (Citations omitted).

**{¶36}** We find the case at bar does not so neatly fall into either one of the categories identified by the *Bailey* court. This is because we find, unlike the court in *State v. Johnson*, supra that the initial placement of the device onto the underside bumper of the suspect vehicle was more than simply a momentary trespass which one could expect from any member of the public.

**{¶37}** "The effect of the 4th Amendment is to put the courts of the United States * * * under limitations and restraints as to the exercise of such power * * * and to forever secure the people * * * against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all * * *. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures * * * should find no sanction in the judgments of the courts, which are charged

---

[5] *State v. Johnson*, supra would fall into this category.

at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights." *Weeks v. United States*(1914), 232 U.S. 383, 391-392, 34 S.Ct. 341, 344, *overruled on other grounds, Mapp v. Ohio*(1961), 367 U.S. 643, 81 S.Ct. 1684.

**{¶38}** "The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court* (1967), 387 U.S. 523, 528, 87 S.Ct. 1727, 1730[6]. The security of one's privacy against arbitrary intrusion by the police-which is at the core of the Fourth Amendment-is basic to a free society. *Wolf v. People of State of Colorado* (1949), 338 U.S. 25, 27, 69 S.Ct. 1359, 1361.

**{¶39}** In *Carroll v. United States* (1925)*,* 267 U.S. 132, 45 S.Ct. 280, the Court recognized that the privacy interests in an automobile are constitutionally protected; however, it held that the ready mobility of the automobile justifies a lesser degree of protection of those interests. See also, *California v. Carney* (1985), 471 U.S. 386, 390, 105 S.Ct. 2066, 2068. The reasons for the vehicle exception are twofold. *South Dakota v. Opperman* (1976)*,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096. "Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office." Id.; *California v. Carney*, supra at 391, 105 S.Ct. at 2069. However, a lesser expectation of privacy does not mean that a citizen has no expectation of privacy in his or her vehicle.

---

[6] The "Fourth Amendment's right of privacy has been declared enforceable against the States through the Due Process Clause of the Fourteenth [Amendment]…" *Mapp v. Ohio* (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 1691.

**{¶40}** There is a right of privacy guaranteed to the citizens of this nation. *Griswold v. Connecticut* (1965), 381 U.S. 479, 484, 85 S.Ct. 1678; *Stanley v. Georgia* (1969), 394 U.S. 557, 89 S.Ct. 1243; and *Eisenstadt v. Baird* (1972), 405 U.S. 438, 92 S.Ct. 1029. "The Court said in full about this right of privacy: 'The principles laid down in this opinion (by Lord Camden in *Entick v. Carrington*, 19 How.St.Tr. 1029) affect the very essence of constitutional liberty and security. They reach further than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employees of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offense,-it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment. Breaking into a house and opening boxes and drawers are circumstances of aggravation; but any forcible and compulsory extortion of a man's own testimony, or of his private papers to be used as evidence to convict him of crime, or to forfeit his goods, is within the condemnation of that judgment. In this regard the fourth and fifth amendments run almost into each other.' 116 U.S., at 630, 6 S.Ct. at 532." *Griswold v. Connecticut*, supra, n. *.

**{¶41}** Over forty years ago the Court cautioned against whittling away the privacy rights of the citizenry in favor of more technologically efficient police investigation techniques:

**{¶42}** "We are rapidly entering the age of no privacy, where everyone is open to surveillance at all times; where there are no secrets from government. The aggressive breaches of privacy by the Government increase by geometric proportions. Wiretapping and 'bugging' run rampant, without effective judicial or legislative control.

**{¶43}** "Secret observation booths in government offices and closed television circuits in industry, extending even to rest rooms, are common. Offices, conference rooms, hotel rooms, and even bedrooms (see *Irvine v. People of State of California*, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561) are 'bugged' for the convenience of government. Peepholes in men's rooms are there to catch homosexuals. See *Smayda v. United States*, 9 Cir. 352 F.2d 251. Personality tests seek to ferret out a man's innermost thoughts on family life, religion, racial attitudes, national origin, politics, atheism, ideology, sex, and the like. Federal agents are often 'wired' so that their conversations are either recorded on their persons (*Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462) or transmitted to tape recorders some blocks away. The Food and Drug Administration recently put a spy in a church organization. Revenue agents have gone in the disguise of Coast Guard officers. They have broken and entered homes to obtain evidence.

**{¶44}** "Polygraph tests of government employees and of employees in industry are rampant. The dossiers on all citizens mount in number and increase in size. Now they are being put on computers so that by pressing one button all the miserable, the sick, the suspect, the unpopular, the offbeat people of the Nation can be instantly identified.

**{¶45}** "These examples and many others demonstrate an alarming trend whereby the privacy and dignity of our citizens is being whittled away by sometimes imperceptible steps. Taken individually, each step may be of little consequence. But when viewed as a whole, there begins to emerge a society quite unlike any we have seen-a society in which government may intrude into the secret regions of man's life at will." *Osborn v. United States* (1966), 385 U.S. 323, 341-343, 87 S.Ct. 439-440. [Footnotes Omitted].

**{¶46}** The initial placement of the GPS tracking device but also its attachment during the entire period of its use implicates Fourth Amendment interests of the privacy rights of persons.

**{¶47}** When a person parks his car on a public way, he does not thereby give up all expectations of privacy in his vehicle. There is no way to lock a door or place the car under a protective cloak as a signal to the police that one considers the car private. *United States v. Holmes* (5th Cir. 1975), 521 F.2d 859, 865. Checking vehicle identification numbers, taking paint scrapings or observing objects in plain view of the car are minimal and momentary intrusions which can be distinguished from the installation of the GPS tracking device in the case at bar.

**{¶48}** Upon observing a stranger underneath one's automobile, it is reasonable to believe that most citizens would sound an alarm. A response to the effect of, "Well, you have no reasonable expectation of privacy in the undercarriage of your car so any stranger can crawl under there and attach a GPS tracking device" would be met with righteous anger and disbelief. A citizen would justifiably feel that his or her property has been defiled; her privacy breached and his personal security compromised.

**{¶49}** We are unwilling to hold that every citizen runs the risk that the government will plant a GPS tracking device in his car in order to track his movements, merely because he drives his car in areas accessible to the public. A citizen has a right to expect that when she drives her car into the street the police or anyone else will not attach a GPS tracking device to her car in order to track her without first obtaining a warrant authorizing the placement of the tracking device.

**{¶50}** The placement of the GPS tracking device makes possible the continuous and indefinite tracing of the individual's movements, wherever he goes. It permits surveillance far beyond any ordinary powers of observation about which citizens may reasonably know, as the government inferentially admits when it contends that placement of the device was necessary in order to effectuate continuous surveillance. *United States v. Michael* (5th Cir 1980), 622 F.2d 744, 752,[7] rehearing *United States v. Michael* (1981)*, 645 F.2d 252, 257 (5th Cir.)(En banc), *cert. denied,* 454 U.S. 950, 102 S.Ct. 489, 70 L.Ed.2d 257. The argument that the device only augments that which can admittedly be done by visual surveillance is feckless. "If this be true, and the facts contradict the position, then there is no need for the device in the first place. Its value lies in its ability to convey information not otherwise available to the government." *United States v. Holmes*, supra at n. 13. The warrantless and unauthorized installation of GPS tracking device intensifies the degree of surveillance following the vehicle

---

[7] Without reaching the issue of whether the installation of the device was a search or seizure under the Fourth Amendment, the Court of Appeals, en banc, in a 16-to-8 decision, concluded that the installation was permissible even if it were assumed to constitute a search. 645 F.2d 252 (1981). It held that reasonable suspicion is adequate to support warrantless installation of a beeper because of the limited expectation of privacy in an automobile, because the intrusion occasioned by the placement of the beeper is minimal, and because the important Government interest in eliminating illegal drug manufacture outweighs the slight infringement of any expectation of privacy. See, *cert. denied United States v. Michael* 454 U.S. 950, 102 S.Ct. 489 (White, J. dissenting).

indefinitely and even indiscriminately into closed precincts (e. g., a garage, a fenced estate) not visually observable which may have Fourth Amendment protection against governmental intrusion to such an extent that it constitutes a violation of Fourth Amendment rights of privacy. *United States v. Michael* supra 622 F.2d 744, 752.

{¶51} Further, without judicial oversight by means of a warrant the GPS tracking device could remain in place indefinitely.  We note there is no evidence in the record of this case as to the battery life of the particular GPS unit attached to the vehicle. However, if a warrant is not required to attach the device in the first instance, nothing prevents law enforcement agents from approaching the vehicle numerous times to install fresh battery packs. Further, if police are not required to obtain a warrant  before attaching a GPS device to a citizen's vehicle, then there is no limitation on the State's use of these devices on any person's vehicle, whether criminal activity is expected or not. Nor is there any restraint upon the length of time that the police may target a citizen's vehicle.

{¶52} We find that the GPS tracking device, remaining constantly in place, performs a search of much more substantial and therefore unreasonable duration and scope. The installation of the device without consent upon private property is a "search" subject to Fourth Amendment warrant requirements, in the sense that it is an unreasonable governmental intrusion upon the individual's constitutionally guaranteed right of personal security, personal liberty, and private property.  *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

D. WHETHER THE GOVERNMENT VIOLATED THE APPELLANT'S LEGITIMATE PRIVACY EXPECTATIONS BY MONITORING THE GPS TRACKING DEVICE'S SIGNAL AFTER THE DEVICE WAS ATTACHED TO THE SUSPECT VEHICLE.

{¶53} The United State Supreme Court held in *United States v. Knotts* (1983), 460 U.S. 276, 281, 103 S.Ct. 1081 that "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." However, the *Knotts* court specifically limited its holding to the facts at issue, which involved the placement of a transmitter on a container which was thereafter taken into a vehicle driven to a cabin. The authorities tracked the container as it moved from one place to another. The police followed the vehicle to the cabin and used the transmitter to maintain and regain visual surveillance. The court reserved the question of whether "twenty-four hour surveillance of any citizen of this country ... without judicial knowledge or supervision" would require a different result. The court further noted that the defendant in *Knotts* did not challenge the warrantless installation of the beeper. Id. at n. **. As Justice Brenan observed "I think this would have been a much more difficult case if respondent had challenged, not merely certain aspects of the monitoring of the beeper installed in the chloroform container purchased by respondent's compatriot, but also its original installation." Id. at 286-287, 103S.Ct. at 1087.

{¶54} In *U.S. v. Maynard,* the D.C. Circuit Court of Appeals addressed the issue reserved by *Knotts* and considered whether 24 hour a day tracking of the whole movements of a person who is suspected of being part of a drug distribution ring over 28 days was constitutional. The *Maynard* court found that the likelihood that someone would observe "the whole" of another person's movements over a month is "not just

remote, it is essentially nil"; that there is a reasonable expectation of privacy in movements over the course of a month; and that the automobile exception to the warrant requirement was not applicable to prolonged GPS surveillance. In *Maynard*, the court reversed the conviction of a defendant where the only evidence presented was that obtained from the GPS device-no drugs were found on the defendant whose conviction was reversed. See, *State v. Holden* (Del.Super Dec. 14, 2010), 2010 WL 5140744. (Unpublished).

{¶55} In *United States v. Bailey*, supra the Court found that the cases concerning the monitoring of a GPS-like device's signal fall into two broad categories. 628 F.2d at 942. With respect to the question whether monitoring the GPS tracking device constitutes a search, courts have held that defendants exhibited no subjective expectation of privacy in information, such as a vehicle's course through public air space or over public roads, which is inherently public[8]. The court in *Bailey* pointed out that several other courts have recognized a defendant has a reduced expectation of privacy in the location of a vehicle he is operating, but have found it unnecessary to decide whether the GPS survelliance in those cases constituted a search because probable cause and exigent circumstances justified the warrantless monitoring. Id. (Citations omitted).

{¶56} A second group consists of cases in which the defendants exhibited subjective privacy expectations that the Government violated by monitoring the devices, but in which the courts found no fourth amendment violations because those subjective privacy expectations were not legally justified. The contraband cases fall into this category. 628 F.2d at 942-43. (Footnotes and citations omitted).

_____

[8] This is essentially the holding relied upon by the Court in *State v. Johnson*, supra.

**{¶57}** "GPS technology is growing increasingly more sophisticated, concealable, inexpensive and pervasive. Law enforcement can use GPS far more widely than they were ever able to use visual surveillance, thereby significantly increasing the number of vehicles exposed to the 24/7 monitoring facilitated by this technology." *State v. Holden, supra.* (Footnotes omitted).

**{¶58}** Courts have distinguished the monitoring of a single trip as far different from constant prolonged surveillance. "GPS and wireless telephone tracking systems allow authorities to surreptitiously monitor and record people's movements in a systematic and detailed manner over an indefinite period of time." *State v. Holden, supra.* (Quoting Blitz, *Video Surveillance and the Constitution of Public Space: Fitting the Fourth Amendment to a World that Tracks Image and Identity,* at 1377 (2004)). See also, *People v. Weaver* (2004)*,* 12 N.Y. 3d 433, 882 N.Y.S. 2d 357, 909 N.E. 2d 1195, 1201. (Construing right to privacy under the New York State Constitution); *State v. Jackson* (2003)*,* 150 Wash.2d 251, 76 P.3d 217, 224. (Construing right to privacy under Washington State Constitution). States have also enacted legislation prohibiting the private use of GPS tracking devices and requiring exclusion of evidence obtained as a result of GPS tracking without a warrant. See *Holden*, supra at 10. (Citing Legislation in California, Pennsylvania, Oklahoma, Hawaii, Minnesota and Utah).

**{¶59}** The tremendous scientific and technological developments that have taken place in the last century have made possible today the widespread use and abuse of electronic surveillance techniques. GPS provides law enforcement with access to areas it could not get into otherwise without a warrant.

{¶60} "The primary reason for the warrant requirement is to interpose a 'neutral and detached magistrate' between the citizen and `the officer engaged in the often competitive enterprise of ferreting out crime."' United States v. *Karo* (1984)*,* 468 U.S. 705, 717, 104 S.Ct. 3296, 3304-3305 (quoting *Johnson v. United States,* (1948) 333 U.S. 10, 14 68 S.Ct. 367, 369). However, the procedure employed in the case at bar allows a single government agent without judicial or legislative authorization and supervision to decide which citizens will be tracked, for how long the tracking will continue and to whom to divulge the results of the citizen's movements. See, *United States v. Michael* (1981)*,* 645 F.2d 252, 257 (5th Cir. En banc), *cert. denied,* 454 U.S. 950, 102 S.Ct. 489, 70 L.Ed.2d 257. (Tate, J. dissenting).

{¶61} The GPS tracking device employed in the case at bar permits the continuous and indefinite tracing of the individual's movements, wherever he goes. It permits surveillance far beyond any ordinary powers of observation about which citizens may reasonably know, as the government inferentially admits when it contends that placement of the device was necessary in order to effectuate continuous surveillance.

{¶62} The GPS tracking device and its associated technology intensifies the degree of surveillance following the vehicle indefinitely and even indiscriminately into closed precincts (e. g., a garage, a fenced estate) not visually observable which may have Fourth Amendment protection against governmental intrusion to such an extent that it constitutes a violation of Fourth Amendment rights of privacy. *United States v. Michael* (5th Cir 1980), 622 F.2d 744, 752, rehearing *United States v. Michael* (1981)*,* 645 F.2d 252, 257 (5th Cir.)(En banc), *cert. denied,* 454 U.S. 950, 102 S.Ct. 489, 70 L.Ed.2d 257.

{¶63} In *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the Supreme Court invalidated the New York wiretap statute because the statute, among other things, authorized a two month surveillance period based on a single showing of probable cause; permitted extensions of two months of the initial surveillance without requiring a new showing of probable cause; and placed no termination date on the eavesdrop once the conversation sought had been seized. 388 U.S. at 59-60, 87 S.Ct. at 1883-1884. These procedures were held to offend the fourth amendment because they authorized "the equivalent of a series of intrusions, searches, and seizures pursuant to a single showing of probable cause." 388 U.S. at 59, 87 S.Ct. at 1883. *Berger* indicates the fourth amendment requires a showing not only of probable cause, but of present probable cause. See 388 U.S. at 59-60, 87 S.Ct. at 1883-1884.

{¶64} The indiscriminate use of GPS tracking devices by law enforcement is of great concern,

{¶65} "I also share the opinion of Mr. Justice BRENNAN that the fantastic advances in the field of electronic communication constitute a great danger to the privacy of the individual; that indiscriminate use of such devices in law enforcement raises grave constitutional questions under the Fourth and Fifth Amendments; and that these considerations impose a heavier responsibility on this Court in its supervision of the fairness of procedures in the federal court system..." *Lopez v. United States* (1963) 373 U.S. 427, 441, 83 S.Ct. 1381, 1389. (Concurring opinion of The Chief Justice).  See also, *Osborn v. United States* (1966), 385 U.S. 323, 329, 87 S.Ct. 429, 432-433.

{¶66} In the present case there was never any showing of probable cause required. Accordingly in the case at bar there is no time limitation upon the ability of law

enforcement to track a suspect vehicle. There is no assurance that the Government will not continue to monitor the device's signals long after its justification for initially placing the device upon the vehicle has ceased to exist. Indeed, nothing other than technological problems would prevent the GPS tracking device from revealing its location forever.

{¶67} The permissibility of using such a device should be allowed under the most precise and discriminate circumstances, circumstances which fully met the "requirement of particularity" as mandated by the Fourth Amendment. We believe that the citizens of this and every other state reasonably expect to be free from prolonged 24-hour a day surveillance. Use of GPS technology without adequate judicial supervision infringes upon the reasonable expectation of privacy. "We downgrade the Fourth Amendment when we forgive noncompliance with its mandate and allow these easier methods of the police to thrive." *Osborn,* 385 U.S. at 364, 87 S.Ct. at 442.

{¶68} Because the procedure employed permitted surveillance of the movements of the appellant constantly for an indefinite period of time without any exigent circumstances or showing of probable cause, it authorized an unreasonable search, and, therefore, was invalid.[9]

{¶69} Accordingly, for all the foregoing reasons appellant's First Assignment of Error is sustained.

II.

---

[9] Nor does the fact that the surveillance lasted nine days rather than many months render tracking permissible. The statute and warrant in *Berger* authorizing unrestricted interception up to sixty days were invalid even though the wiretap was terminated after thirteen days. 388 U.S. at 100, 87 S.Ct. at 1904 (Harlan, J., dissenting).

{¶70} In his Second Assignment of Error, appellant maintains that the trial court erred in imposing consecutive sentences.

{¶71} In light of our disposition of appellant's First Assignment of Error, we find this issue to be premature.

{¶72} Accordingly, we overrule appellant's Second Assignment of Error on the basis that it is not ripe for review.

{¶73} For the forgoing reasons the judgment of the Fairfield County Court of Common Pleas, Fairfield County, Ohio is reversed and this matter is remanded for proceedings in accordance with our opinion and the law.

By Gwin, P.J., and

Wise, J., concur;

Hoffman, J., dissents

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE

WSG:clw 0627

*Hoffman, J., dissenting*

{¶74} I respectfully dissent from the majority opinion. I do so not because I do not share the majority's concern over expanding governmental intrusion into the personal lives of its citizens, but because I believe the intrusion involved herein does not rise to the level of a constitutional violation.

{¶75} As noted by the majority, the Ohio Supreme Court will soon address this issue in *State v. Johnson*, 190 Ohio App.3d 750, 2010-Ohio-5808. Because it has not yet done so, I take this opportunity to add "my two cents worth" to the discussion.[10]

{¶76} I begin by repeating the language of the Fourth Amendment quoted in the majority opinion. The Fourth Amendment protects the "…right of the people to be secure in their persons, houses, paper and effects, against unreasonable searches and seizures." While I think it reasonable to assume few, if any, of the drafters ever envisioned the existence of automobiles, let alone the sophistication of GPS tracking devices, strict constructionists might argue the Fourth Amendment has no application to the case sub judice. While the drafters of the Fourth Amendment did not choose to specifically include "wagons" or "buggies" within the gambit of the amendment, the United States Supreme Court has routinely applied the constitutional protections afforded by the amendment to motor vehicles.

{¶77} The majority quotes extensively other courts' examples of the government's past aggressive breaches of privacy ranging from surreptitious wiretapping and buggings running rampant; secret observation booths extending into hotel rooms, restrooms and even bedrooms; placement of a spy into a church organization; revenue agents disguised as military personnel; criminal intrusions into

---

[10] I do understand my opinion may not be worth two cents.

homes; (inappropriate) use of polygraph tests; and the compilation of dossiers on all citizens.

{¶78} While I share concern for the whittling away of privacy interests exemplified by these past overly aggressive governmental intrusions into Fourth Amendment protections, they have little, if any, relevancy to the issue this case presents. These examples of past abuses by the government do not support the majority's apparent conclusion the scientific and technological developments of electronic surveillance techniques as used in this case have resulted in widespread "use and abuse". The litany of past abuses related by the majority does not warrant deviance from the legal analysis and conclusion established by the United States Supreme Court in *United States v. Knotts* (1983), 460 U.S. 281, i.e., that a person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another.

{¶79} I agree with the majority's statement the initial placement of the GPS/beeper device and its attachment during the entire period of its use "implicates" Fourth Amendment interests of the privacy rights of persons. (Majority Opinion at ¶45). But do they violate them? I believe not.

{¶80} While an occupant(s) of a vehicle may have certain expectations of privacy with respect to his person or property effects within that vehicle while out in public, I do not find such expectation of privacy extends to his movement/location of the vehicle itself while in public.[11] The fact a citizen might well feel righteous anger,

---

[11] The majority's description of the GPS device as a "bug" is somewhat misleading as most associate the term "bug" with a surreptitious listening device.

disbelief or defilement by the placement of the GPS device on his vehicle, does not make its placement a constitutional violation. While I recognize individual states retain the right to restrict use of tracking devices and acknowledge some states have already done so, such exercise reflects a policy decision, and is not the product of a constitutional mandate. While the majority identifies many valid concerns about the potential intrusion such GPS devices may have on an otherwise unsuspecting, law abiding citizenry, I believe such concerns should be addressed by the policy makers – the legislature, through enactment of law, or the executive branch, through adoption of internal policy. But I continue to maintain the advisability of such policy is not mandated by the Fourth Amendment.

{¶81} I recognize the United States Supreme Court in *Knotts* limited the scope of its decision and reserved the question of whether twenty-four hour surveillance, without judicial knowledge or supervision, would require a different result. The majority aptly notes the difference in ability to monitor movement available by use of the present day GPS devices versus the beeper used in the *Knotts* case. While the present case is clearly factually different from the scenario presented in *Knotts* as to the extent and duration of the surveillance, I find such does not alter the fundamental rationale underlying the decision in *Knotts*. That being because the government has a right to conduct surveillance of it citizens when they are in public, citizens have no reasonable expectation of privacy while doing so. While modern tracking devices provide an easier and more efficient manner of doing so, such does not change a person's expectation of privacy once voluntarily located in the public domain.

---

However, the majority does clarify the "bug" is for tracking movement. (Majority Opinion at ¶50).

**{¶82}** I specifically disagree with the majority's conclusion the argument the GPS device only augments that which can admittedly be done by visual surveillance is "feckless". (Majority Opinion at ¶50). Given enough manpower, I believe equal visual surveillance as that provided by the device is possible. The limitation of human resources does not bear on the level of a citizen's expectation of privacy. While the GPS device "intensifies the degree of surveillance indefinitely and even indiscriminately" (Majority Opinion at ¶50), concerns over duration and scope seem to me to be a logical disconnect from the underlying legal principal established in *Knotts*.

**{¶83}** The argument the duration of use of the GPS device results in a constitutional violation is particularly troublesome. If during any one hour or on any one day, it is permissible for police officers to surveil someone while in the public way, why not more than one hour or day. The person's expectation of privacy when in public does not change from any particular hour or day to the next. While the capability of the GPS device facially seems more intrusive, it involves no more intrusion as to any one singular instance of public movement than permissible human surveillance would.

**{¶84}** While the notion "big brother is watching" is an uncomfortable concept to the general public, I doubt many would question the use of GPS devices to monitor movement of suspected terrorists even if no probable cause of criminal activity existed for so doing. Again, I maintain the selection of targets for surveillance and the duration and scope of that surveillance are matters properly addressed by policy makers rather than an offspring of the Fourth Amendment.

**{¶85}** I concur in the decision reached by our colleagues from the Twelfth

District in *Johnson.*  I await direction from the Ohio Supreme Court.


_____

HON. WILLIAM B. HOFFMAN

[Cite as *State v. Sullivan*, 2011-Ohio-4967.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                :

             :

        Plaintiff-Appellee    :

             :

             :

-vs-                 :         JUDGMENT ENTRY

             :

MONTIE E. SULLIVAN    :

             :

             :

        Defendant-Appellant  :        CASE NO. 2010-CA-52

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Fairfield County Court of Common Pleas, Fairfield County, Ohio is reversed and this matter is remanded for proceedings in accordance with our opinion and the law. Costs to appellee.

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. JOHN W. WISE